THE ROCHESTER AND GENESEE VALLEY RAILROAD *vs.* THE CLARKE NATIONAL BANK.

THE SAME *vs.* THE SAME.

THE SAME *vs.* THE ERIE RAILWAY COMPANY.

To constitute a person an officer *de facto*, a mere claim to be such officer, and exercising the duties of the office, are not sufficient. It is well settled that there must be color for the claim, and a colorable title to the office.

An officer *de facto* is one who exercises the duties of an office under color of right, by virtue of an appointment, or election, to that office. . He differs, on the one hand, from a mere usurper of an office, who undertakes to act as an officer without any color of right, and on the other, from an officer *de jure*, who is in all respects legally appointed and qualified to exercise the office.

When the color of authority notoriously ceases, the reason for sustaining the acts of persons who are in possession of, and exercising the powers and performing the duties of an office, under color of authority, as the acts of officers *de facto*, ceases.

When, by a judgment of the court of last resort, in a direct proceeding to determine the title of officers *de facto*, it has been adjudged that they have no rightful title to the office, but are mere usurpers, then, at least as to all who have notice of such proceeding and judgment, the color of authority has ceased; and this without regard to whether any body else has been inducted into the office or not.

As officers *de facto*, there must be at least a presumption that they are rightfully in office. Such presumption cannot be said to exist after the decision of a competent tribunal to the contrary.

The circumstance that an appeal has been taken from a decision of the Court of Appeals to the Supreme Court of the United States, cannot absolve this court from following the decision. By this court the decision of the tribunal of last resort of the State must be considered the law of the land, until it shall have been reversed.

APPEALS from orders made at a special term in Monroe county, denying a motion of the defendant, in each action, to dismiss the complaint.

The motion was for an order directing the discontinuance of these actions, with costs to be paid by the attorneys, on the ground that they were brought without the authority of the nominal plaintiff.

The first action was for five coupon bonds of the United

Rochester and Genesee Valley Railroad *v.* Clarke National Bank.

States, of $1000 each, alleged to have been deposited with the defendant. The defendant answered, denying such deposit. The second action was for $4090.33 in money, alleged to have been deposited with the defendant. The answer simply denies that a demand was made by the proper parties. The third action was for money owing upon a lease, for the use of the road of the plaintiff. There was no answer in this action.

The defendants showed by affidavit that the city of Rochester claims to elect seven of the thirteen directors, under the act of 1867. Also that individual stockholders, disregarding that act, elected nine directors in June 1868, and also in 1869. Also that another board of thirteen persons claiming to be directors, entered the office of the former secretary and took possession. Also that these thirteen persons claim to be the sole directors, to the exclusion of another board of directors, known as the Miller board, and that the actions were brought by their authority. There were also the affidavits of the Miller directors, showing that they did not give authority to commence the actions. On the part of the plaintiff it was shown that the seven directors appointed by the city of Rochester and three of the six elected by the stockholders, met at the office of the company, organized and elected officers. That the treasurer then elected, has ever since been in the exclusive possession of the company's office, books, papers, stock transfer books, seal, title deeds, &c. That these actions were directed to be commenced by the board of directors. Also that ample security was offered the defendant, The Clarke National Bank. That at the time said treasurer took possession, there was a judgment of the Supreme Court in his favor. That said treasurer and board of directors are the officers *de facto* of the company. That the Erie Railway Company are owing the plaintiff, for rent, from $24,000 to $30,000.

The motion was denied, at the special term, and the defendants appealed.

*J. C. Cochrane,* for the respondent.

I. This was an application on the part of the defendants to dismiss the actions, on the ground that the attorneys were not authorized to bring them. The defendants have no interest in this question, except for their own protection. The fact that the actions are prosecuted in good faith, by regular attorneys of this court, whose responsibility is not disputed, is sufficient for that purpose. *(Jackson* v. *Stewart,* 6 *John.* 34. *Denton* v. *Noyes, Id.* 296. *Hamilton* v. *Wright,* 37 *N. Y.* 502. *American Ins. Co.* v. *Oakley,* 9 *Paige,* 496.) Besides, abundant security was offered in the Clarke Bank case, and the Erie Railway controls the illegal board of directors.

II. The defendants do not show any pretense of danger or risk to them. Their only fear is that some of the funds of the plaintiff may get into the hands of an unauthorized attorney. This unexampled care on the part of the defendants for the interest of the adverse party, is no doubt praiseworthy, providing there is no cat in the meal tub.

III. In 1867 the legislature provided for the election of directors. Certain disinterested gentlemen resolved that the law was a nullity, and elected themselves to office, contrary to the statute. These gentlemen, utterly unrecognized by law, and having therefore no standing in court themselves, seek to climb in upon the backs of the defendants. They all swear that they want the actions discontinued, and that they did not authorize them to be brought. We never claimed to have any authority from them, or admitted that they had any authority to give. But can these gentlemen try in this way their own authority, on the pretext of trying the authority of the attorneys? We submit they cannot. So far as the defendants are concerned, it is sufficient that the attorneys are fully

authorized by a board of directors in fact existing, and claiming in good faith to be the only legal board. The title of the members of the two conflicting boards is not to be tried in a collateral action, between strangers, in which no member of either board is a party.

IV. But the plaintiff's attorneys have authority from the legal board. They have authority from the board of directors elected under the act of 1867. That act having been declared constitutional by the Court of Appeals, the legality of the board elected under it is no longer an open question.

V. This board of directors is not only the board *de jure*, but also *de facto*. They have possession of the plaintiff's office, the corporate seal, the stock and transfer books, the title deeds and all the papers of the plaintiff. They are actually in office, performing all the duties of a corporation, and moreover invested by virtue of a judgment of the Supreme Court.

VI. The gentlemen who swear they gave no authority had no authority to give. Their election was a nullity. They admit that their only authority is derived from a statute which was repealed before their election. They are not a board of directors *de jure*.

VII. These gentlemen, since the farce of an election, have not pretended to perform any official act. They have not been in possession of the office, or seal, or any of the property or papers of the plaintiff. They have not even pretended to hold a meeting. They had a train of cars delayed to enable them to run away as soon as the election was over, and were never heard of again until they were hunted up through the different counties of the State from Erie to Westchester, to make affidavits that they had not given authority to the attorneys for the plaintiff. They certainly are not the board of directors *de facto*.

VIII. The special term in its discretion denied the mo-

tion to discontinue the actions. That decision should be affirmed, with costs.

*H. R. Selden*, for the appellants.

I. If these actions are commenced without authority from the nominal plaintiff, it is very clear that the defendants' motion should be granted. 1. If the attorneys are in fact without authority, judgments in these suits would furnish no defense to subsequent actions by the corporation. (*Robson* v. *Eaton*, 1 *T. R.* 62. *Bates* v. *Voorhees*, 20 *N. Y.* 525.) 2. In such case the remedy is by motion to set aside the proceedings. *Paine & Duer* say: "And it seems that where an action is brought by an attorney without proper authority, the court will set aside the proceedings; for, otherwise, the defendant may be twice charged." (1 *P. & D. Prac.* 195. *See also Chivers* v. *Fenn*, 2 *Show.* 161; *Maries* v. *Maries*, 23 *Eng. Law and Eq.* 221; *Ninety-nine Plaintiffs* v. *Vanderbilt*, 1 *Abb.* 193, 201, 202; *Bates* v. *Voorhees*, 20 *N. Y.* 525; *North Baptist Church* v. *Parker*, 36 *Barb.* 171.)

II. The attorneys were not in fact authorized by the corporation to commence these suits. 1. This question does not depend upon the question whether the persons assuming to give authority for the prosecution of these suits, are entitled, *de jure*, to act as directors of the corporation, but whether, when they assumed to give such authority, they constituted the *de facto* board of directors. If they were legally elected, but were kept out of their offices by a *de facto* board, it was necessary for them to establish their right by action of *quo warranto*, or in the nature of *quo warranto*, before they could lawfully act for the corporation. This is a rule which it is indispensable to adhere to to avoid confusion—to avoid the substitution of club law, or grab law in place of civil law. (*North Baptist Church* v. *Parker*, 36 *Barb.* 171, 174, 175. *Berrian* v. *The Methodist Society in New York*, 4 *Abb.* 424. *Reformed*

*Methodist Society* v. *Draper and others,* 97 *Mass.* 349.   *The
People* v. *Corporation of N. Y.,* 3 *John. Cas.* 79.   *The People*
v. *Stevens,* 5 *Hill,* 628–631.   *Hughes* v. *Parker,* 20 *N. H.*
58.   *Hartt* v. *Harvey,* 32 *Barb.* 55, 64, 65.)   2. The board
of directors of which Charles G. Miller is president, was,
when these actions were commenced, and still is, the board
of directors *de facto* of the Rochester and Genesee Valley
Railroad Co.   This is shown, (1.) By their regular suc-
cession, at least since 1862.   The opposing affidavits sub-
stantially carry this regular succession back to 1854.
(2.) By the certificate of their election, entered by the
inspectors in the records of the corporation.   The right of
the inspectors is established by the fact that both sets of
directors claim their positions by virtue of the election
held by them, as well as by their appointment by the pre-
vious board, whose rightful authority is not questioned.
(3.) By the recognition of that board by the corporation
of Rochester, through the certificate of its clerk to Mr.
Hills, the secretary, of the appointment of four directors
by the city.   (4.) By the attendance of the four city direct-
ors upon that board, as the board of directors of the com-
pany.   (5.) By its control of the safe, books and papers
of the company, down to the time when they were wrong-
fully taken possession of by Mr. McConvill.   (6.) By the
action of Bronson and Hammatt (the only directors ap-
pointed by the city who were competent to hold the office
of director, according to the decision of this court in Sep-
tember, 1869,) remaining in the board presided over by
Miller, and taking part in the proceedings, after their asso-
ciates appointed by the city, had been excluded.   With
what grace, after this, Mr. Hammatt could get his scat-
tered forces together, and attempt to organize another
board and have himself made president of it, it is not easy
to conceive.   (7.) By the statements of the complaint in
the case of *The City of Rochester, E. R. Hammatt and John
McConvill* v. *The Rochester and Genesee Valley Railroad Co.,*

*The Erie Railway Co., Henry Martin and others*, which is made by the affidavit of Mr. McConvill, a part of the opposition to this motion, it appears that the Miller board was the board of directors *de facto* (and *de jure*, too, so far as appears,) from June 10, 1868, to June 10, 1869, and "in possession of all the books, papers, muniments of title, funds, and the office of said company." That the new board elected June 10, 1869, of which Mr. Miller was made president, " claimed to be, in connection with Bronson and Hammatt, the sole acting board of directors of the said Rochester and Genesee Valley Railroad Company, and to exclude, and did exclude, from all meetings of said board, all persons elected by and on behalf of the city of Rochester, other than Bronson and Hammatt." That this statement refers to the new board elected 10th June, 1869, is obvious from the next paragraph, which shows that it was after Mr. Hills resigned his office, and he resigned to the newly elected board, who filled his place with Mr. Cameron. Indeed the whole basis of this complaint rested upon the fact that the Miller board was the board *de facto* of the Genesee Valley Railroad Company. If they were not such, there was no ground whatever for the action. (See the prayer of the complaint.) The plaintiffs in this action, be it observed, were the city of Rochester, Edward R. Hammatt and John McConvill. That is, the city and the president and secretary of the city's board, all recognizing the Miller board as the board *de facto* of the corporation—down to the very time that they got hold of the books and papers by picking the locks of the company. Now whether the Hammatt board was legally elected or not, it could not oust a board holding possession *de facto*, by any such proceeding as that. To sustain it would be to substitute the grab game, if not burglary, in the place of *quo warranto*. (*See* 97 *Mass.* 349, *supra, and the other cases referred to under the 1st subdivision of point* 2.)

III. The pretense set up on the argument at the special

term, that McConvill took possession of the books, papers, &c., in pursuance of the judgment of the court in his favor, has no foundation to rest upon.   1. He had only the right by his judgment to proceed *after demand,* as provided by the statutes.   (*Code,* §§ 437, 438.   1 *R. S.* 125, § 51.)   The reference in section 438 of the Code to chapter 6 of the first part of the Revised Statutes, should be to chapter 5. All this Mr. McConvill tried before the county judge, and after a very thorough hearing, his application was denied, months before his attempt to get possession of the books and papers on the 10th of June.   We say, therefore, the judgment had spent its force.   These facts do not appear in the affidavits, but they were stated to the court below on the argument, and not questioned by the counsel opposing the motion, who was the party in the proceeding before the county judge.   Had the facts been questioned, I should have asked to postpone the motion, that they might be introduced.   2. If the judgment was in force and unexecuted, the party had no right to execute it himself, by a trespass, as breaking open the safe clearly was. He could gain no right by that wrong.   3. Mr. McConvill's affidavit shows that that judgment had, long before the transaction in question took place, been reversed by the general term.

IV. The defendants have no remedy but by this motion, and the relief asked is necessary for their protection. Issue cannot be joined upon the right of the attorneys to prosecute the suit—to be tried on the trial of the cause. Such a question is wholly foreign to the alleged cause of action.   (*Vincent* v. *Vanderbilt,* 10 *How. Pr.* 327, 328. *S. C., under the name of ninety-nine plaintiffs* v. *Vanderbilt,* 1 *Abb.* 201, 202, *and cases cited.   Commissioners of Excise* v. *Purdy,* 22 *How. Pr.* 314.   *North Baptist Church* v. *Parker,* 36 *Barb.* 175, 176.)   If these suits are allowed to proceed, the defendants cannot, on the trial, avail themselves of this defense.   They may not deny their liability to the Roches-

ter and Genesee Valley Railroad Company, and will doubtless respond to it whenever it demands that they should. All they now say is, this company has not made the demand, and those who prosecute this suit have no authority to use its name for that purpose. If it shall turn out, as it may, that the board authorizing these suits has no authority, either as the board *de jure* or the board *de facto*, to authorize the suits, then payment to them, even under a judgment, will constitute no defense to an action by the proper board, as is shown above. If the Hammatt board can be regarded as the board *de facto*, whether *de jure* or not, I concede that the actions are well brought. An action by a board *de facto*, whether *de jure* or not, binds the corporation, and judgment in such an action would constitute a defense to any other action. (*All Saints' Church* v. *Lovett*, 1 *Hall*, 191, 198. *Trustees of Vernon Society* v. *Hill*, 6 *Cowen*, 23, 27.) But there cannot be two boards *de facto* at the same time; and when two claim, as in this case, the court must decide between them; and must, as it seems to me, for the reasons above given, decide it on motion. All the court is called upon to say to the parties ordering these suits is, "you are not the parties now having in fact the control of this corporation, and you cannot use its name. If you have the right to such control, we cannot hear that allegation here. You must bring your action of *quo warranto*, and get peaceable and lawful possession of the corporation, and then you can control it. Until that time comes, you cannot prosecute actions in its name." (*See cases cited under point 4, especially the case of North Baptist. Church* v. *Parker.*) It may be supposed that the defendants should file a bill of interpleader; but it is not perceived how this can be done. There are no two parties to interplead. Here is but one party who asserts any claim, and the defendants, perhaps, do not deny their liability to that party. They only say that the attorneys who have brought suit in the name of that party, have no authority

from the party to do so.   This furnishes no ground for an
order of interpleader.   But suppose it be said that we
could make the antagonist sets of directors parties, and
require them to interplead.   Who ever heard of an inter-
pleader suit, to compel hostile claimants of an office to in-
terplead to try their right?   Chancery has no jurisdiction
of any such question.   (11 *Paige*, 124.   36 *Barb.* 175, 176.)
Besides, such question can only be tried by action at the
suit of the people, brought by the Attorney-General.
Should we make the people parties to our interpleader?
And again, two such suits, as the papers show, are now
pending between substantially the same parties, to try the
identical question which would be involved in the inter-
pleader suit, if one could properly be ordered.   Why order
another?

VI.   The suits should be ordered discontinued, and not
merely stayed.   If the Hammatt board is the board of
directors *de facto*, or rather was so, when these suits were
commenced, then they were rightfully commenced, and
the court should neither stay them nor order them dis-
continued.   On the other hand, if that board was not the
board *de facto* of the corporation, then there was no author-
ity to the attorneys to commence the suits, and they should
be discontinued.   If the Hammatt board should succeed
in the pending suits in establishing their right, they will
then have no difficulty in getting into possession of their
offices without committing any trespasses, and they can
then prosecute all the legal rights of the company.   Until
then, they must allow the board taking its title in regular
succession from the creation of the corporation, and which
has always governed its affairs, to continue to govern
them ; and as that board not only has not authorized the
prosecution of these suits, but all the acting members of
the board—except Hammatt and Bronson, who like the
bats in the battle between the beasts and birds, are flitting

between both boards—have asked to have them discontinued, they should be discontinued.

VII. The attorneys should be ordered to pay the costs. Such is the practice, and there can be no other, as they do not represent any party before the court which can be reached by the order of the court. (*Maries* v. *Maries,* 23 *Eng. Law and Eq.* 221.) This case shows, not only that the attorney in such case should be made to pay the costs, but that the attorney is in default who does not " obtain a written authority from his client to institute proceedings." I do not wish to charge the attorneys with costs in this case on the ground that they are personally culpable, but on the ground that it is only through them that those who stand behind them can be reached, and because there is no other person whom the court can touch. It appears, however, that in the parallel case of *North Baptist Church* v. *Parker,* (*supra,*) the court ordered the costs paid by the persons who claimed as trustees *de jure,* (without showing themselves trustees *de facto,*) to bring the action in the name of the corporation. There was certainly justice in that order, and if the precedent is a sound one, it would be very just to follow it here.

VIII. It is, perhaps, proper to say a few words in regard to the decision of this motion at special term. It was argued in October 1869. It was not decided until January 1871. No opinion was written, but we know, otherwise, that the papers were held to await the decision in the Court of Appeals, of one of the *quo warranto* cases referred to in the affidavits. That case was decided in December 1870, *pro forma* only, by an equally divided court, to the end that it might be taken at once to the Supreme Court of the United States, the question being one within the appellate jurisdiction of that court. On learning that such judgment had been entered in the Court of Appeals, the justice holding the motion papers regarding that decision as decisive of the rights of the parties, denied our

Rochester and Genesee Valley Railroad *v.* Clarke National Bank.

motion on that ground, without, as we understand, deciding the serious questions which we suppose to be still involved in the motion.   We believe it was an entire mistake to assume that the decision of the Court of Appeals, whether by a divided or by an undivided court, changed in the least degree the question involved in this motion, or that it could possibly furnish any ground for the decision of it.   1. In the first place, that decision by the Court of Appeals was no more a final decision of the question than was the decision of the general term, and there would have been the same propriety in holding, when the motion was first made, that the decision of this court against the right of the Miller board was conclusive on the rights of the parties, as in holding the decision of the Court of Appeals conclusive.   That case stands now on appeal before the Supreme Court of the United States, and its present position, therefore, is exactly the same, so far as the rights of the different claimants are concerned, as it was when this motion was made.   2. In the second place, if the judgment of the Court of Appeals were final and conclusive as to the rights *de jure* of the claimants, they would still, until the judgment should be executed, and they put in possession of the offices and the usurpers ousted, fall short of the position of directors *de facto*, and therefore could not, as is shown above, bring actions in the corporate name.   There can be, as we have said before, but one board of directors *de facto* at the same time.   If there could be, as the acts of *de facto* boards are valid and binding until they are ousted by judicial proceedings, (6 *Cowen*, 27; 1 *Hall*, 198,) one board could regularly undo all that should be done by the other.   3. But even if the judgment of the Court of Appeals were final, and had been executed, and the claimants put in possession, that would not justify the maintenance of these suits.   After gaining the position of a board *de facto*, they could bring suits in the corporate name, but had no such right when these

suits were brought, nor when our motion was made. 4. In point of fact, however, all the judgments yet rendered in the case now pending in the Supreme Court of the United States, instead of being in favor of the right of the parties who assume to be directors, and to use the corporate name to prosecute these actions, are directly and conclusively against their right. The action was commenced in favor of the people of the State of New York, and of Hammatt and his associates, and demanded judgment of ouster against Miller and others as usurpers of the offices of director, and that the plaintiffs, other than the people were entitled to those offices. Before the case came to trial, the decision of this court in *The People* v. *Hills*, (1 *Lans.* 203,) was made, showing that none of the persons claiming to be directors *de jure*, except Hammatt and Bronson, were eligible to the office, and consequently no judgment was taken or claimed at the special term in favor of any of the relators, but only judgment of ouster against the defendants, and from that time the names of the relators were dropped out of the proceedings, which have since been conducted between the people. only as plaintiffs, and Miller and his associates as defendants. That record, therefore, instead of establishing the right of the Hammatt board as directors, either *de jure* or *de facto*, establishes conclusively the want of such right. If we admit that it establishes the want of right on the part of Miller and his associates, that is wholly immaterial here. The question here depends exclusively on the right of the Hammatt board, who assume to use the corporate name to bring these actions; and that, not on their right *de jure*, but on their right *de facto*. Not upon their right to the office, but on their actual possession of it. The record is conclusive against them in both respects. First, the foundation of the action rests upon the allegation that they are not in possession of the offices, but are held out by Miller and his associates who have

usurped the offices and hold them.   The decision in *The* *People* v. *Hills*, applied to the facts disclosed by affidavits here, as to the incompetence of the relators to hold the offices, shows why they failed to demand judgment installing them in office, as well as ousting Miller and his associates, and why they could not have obtained such judgment, had they demanded it.

*By the Court,* TALCOTT, J.   A motion was made in each of the above entitled actions, that the same be discontinued, upon the alleged ground that the same was brought by the attorney of record therein, without the authority of the plaintiff.   On these motions the appellants sought to sustain the allegation of want of authority to bring the actions, by showing that the board of directors of the plaintiff, and the officers under whose authority the attorneys for the plaintiff acted in bringing the actions, were not legally and duly elected, or, at all events, that another set of directors and officers, whose alleged title the defendants undertake to set up, were the officers *de facto* of the corporation.

It is probably doubtful whether such questions as are sought to be presented on these motions, can be properly reached and determined upon motions of this character.

Certainly a determination that the one or the other set of these rival claimants to the offices was lawfully entitled, could not have any binding effect upon the claimants, or determine the question as against either of those parties.

The counsel for the appellants, however, insists that it is not necessary to determine who is rightfully entitled to the offices which are in dispute, and claims that upon the evidence in the case, the board of directors of which Charles G. Miller is president, is the board of directors *de facto*, and as such entitled to control and manage the affairs of the company, to the exclusion of the rival board. An examination of the affidavits and other papers sub-

mitted on the appeal, shows that each party has possess-
ion of some of the books and papers of the company, and
each assumes to be in possession of the offices, and acts
upon the assumption of such possession and title; so that
it would be quite difficult to determine, if that were neces-
sary, that either party, or if either, then which, was in
such actual possession of the offices as to constitute such
party, for legal purposes, the officers *de facto* of the cor-
poration plaintiff.

It seems to us, however, that there is a consideration
which renders it unnecessary to determine the conflict
between the parties as to who is in the actual possession
of the office, as a matter of fact. It is understood to be
conceded by the counsel for the appellant, that not only
the general term of the seventh district, but the Court of
Appeals, upon *quo warranto* proceedings, have determined
that the board of directors of which Charles G. Miller is
president, are not rightfully in office, and this, it seems to
us, disposes of all question as to their title, whether as
officers *de jure* or *de facto*.

To constitute a person an officer *de facto*, a mere claim
to be such officer, and exercising the duties of the office,
are not sufficient. It is well settled that there must be
color for the claim, and a colorable title to the office.
( *Wilcox* v. *Smith,* 5 *Wend.* 231. *People* v. *White,* 24 *id.* 520.
*People* v. *Peabody,* 6 *Abb.* 228.) As was said by the Su-
preme Court of Connecticut, "an officer *de facto* is one
who exercises the duties of an officer under color of right,
by virtue of an appointment or election to that office. He
differs on the one hand from a mere usurper of an office,
who undertakes to act as an officer without any color of
right, and on the other from an officer *de jure*, who is in
all respects legally appointed and qualified to exercise the
office." (*The Town of Plymouth* v. *Plymouth,* 17 *Conn.* 585.
*The King* v. *The Corporation of Bedford Level,* 6 *East,* 356.)

The reason for sustaining the validity of the acts of per-

sons who are in possession of and exercising the powers and performing the duties of an office, under color of authority, so far as third persons are concerned, is, that such third person cannot be supposed to know all the facts, or be able to determine with any certainty the question of legal title.

When the color of authority notoriously ceases, the reason for sustaining their acts as the acts of officers *de facto* ceases. (*The King* v. *Corp. of Bedf. Level, supra.*)

We think that when by a judgment of the court of last resort, in a direct proceeding to determine the title of officers *de facto*, it has been adjudged that they have no rightful title to the office, but are mere usurpers, then, at least as to all who have notice of such proceeding and judgment, the color of authority has ceased; and this without regard to whether anybody else has been inducted into the office or not. As officers *de facto* there must be at least a presumption that they are rightfully in office. Such presumption cannot be said to exist after the decision of a competent tribunal to the contrary. To hold that persons who, according to the decision of the court having jurisdiction to decide so as to bind the parties and the public, are mere usurpers, may still exercise the powers and discharge the duties of the usurpers' office, is to deprive the judgment of ouster of all force or effect.

This leaves, in this controversy, the other party, composed of Hammatt and his associates as the only parties who can be said to have any color of title.

It is stated by the counsel for the appellant that the papers upon these motions were held by the justice before whom they were made until the decision of the Court of Appeals referred to, when the motions were denied, upon the assumption that that decision disposed, in effect, of the motions. We think, for the reasons above stated, this was correct.

It is stated that an appeal has been taken from the de-

cision of the Court of Appeals to the Supreme Court of the United States. That circumstance cannot absolve us from the duty of following the decision. By this court the decision of the tribunal of last resort of the State must be considered the law of the land, until it shall have been reversed.

The order appealed from, in each case, must be affirmed, with $10 costs of appeal.

[Fourth Department, General Term, at Rochester, September 4, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]