THE PEOPLE *ex rel.* JOHN W. GILCHRIST AND JOHN W. GILCHRIST, Appellant, *against* FRANCIS MURRAY, Respondent.

(Decided January 7th, 1878.)

A judgment of ouster in an action in the nature of *quo warranto* to determine the title to a public office is not conclusive upon, or evidence against, one not a party to the suit, nor claiming under such a party.*

A. was appointed assistant clerk of a district court in New York City, and subsequently removed by the justice thereof, and B. appointed ; and B. thereafter having been removed, and C. appointed; in an action in the nature of a *quo warranto* on the relation of B. against C., a judgment ousting C. and declaring B. entitled to the office was rendered. Before the entry of the formal judgment, A., with the consent of C., resumed possession of the office under his original appointment. In an action in the nature of *quo warranto* on the relation of B. against A. to recover possession of the office,—*Held*, that the judgment in the action on the relation of B. against C. was not binding on or conclusive against A.*

The office of assistant clerk of a district court of the city of New York and that of member of Assembly are not incompatible, and serving in the latter capacity is not a vacation of the former office.*

APPEAL from a judgment of this court, entered by direction of a judge at trial term, and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*Nelson J. Waterbury*, for appellant.

*Elliot Sandford & James W. Fowler*, for respondent.

ROBINSON, J.—This action was instituted by the attorney-general under the provisions of the Code (sections 428, &c.) to obtain the relief they afforded, as a substitute for a *quo warranto*, and was brought to oust the defendant Murray from the office of assistant clerk of the Second Judicial Dis-

---

* The head notes here given are in accordance with the decision of the Court of Appeals, which agreed with the dissenting opinion of DALY, Ch. J. *See note at end of case.*

trict of this city, and to enforce the rights of the relator thereto. It was shown the relator was appointed to that office in January, 1875, by Charles M. Clancey, then justice of the court; that he duly entered upon and exercised the office until he was expelled therefrom in January, 1876, by Francis Mangin, whom said Clancey assumed to appoint to and instate in the office, instead of the relator. The Court of Appeals, in *The People ex rel. Hogan* v. *Flynn* (62 N. Y. 375), had in June previous, in an analogous case (probably then not known to the justice), held that the term of office of an assistant clerk of such district courts was for six years, and that the justice had no such power of removal of the relator as he attempted to exercise. An action was, in accordance with that decision, brought by these same plaintiffs in this court in 1876 upon a complaint by way of an information in the nature of a *quo warranto*, like that in the present action, against said Francis Mangin, in which judgment was rendered on January 6th, 1877, by which it was adjudged that said Mangin had usurped said office since January 1st, 1876, and still unlawfully held and exercised the same, and that he be removed and ejected therefrom; and further, that the relator, John W. Gilchrist, was entitled to the office, and had been so entitled since January 4th, 1875. Upon attempting to re-enter thereon, the relator found that this defendant Murray had intruded into the office with the consent or concurrence of Justice Clancey, then justice of the court, on the 2d day of January, 1877, and by such intrusion and recognition by the justice, he (the relator) was further excluded from the office, in consequence of which this action was brought. The claim or defense under which defendant so obtruded into the office was (as was proved), that he had previously, in March, 1873, been appointed to the office by Thomas Kivlen, Esquire, then the justice of said court, and in January, 1874, had been unlawfully excluded therefrom under a like assumption of power by Justice Field, his successor, who then instated James A. Monaghan as assistant clerk in his place, and said Monaghan had entered upon the performance of the duties of the office in exclusion of said defendant.

The People ex. rel. Gilchrist v. Murray.

Although the defendant Murray was, so far as appears from the case presented, regularly appointed by Justice Kivlen in March, 1873, it is manifest the justices of said courts had, before the said decision of the Court of Appeals, assumed and exercised the prerogative and arbitrary discretion of appointing and removing their clerks and assistant clerks at pleasure; and notwithstanding anything appearing in the proofs, some one else may still lay claim to the present office with like pretension with either Gilchrist or Murray, by virtue of an appointment at some date within six years by one or other of the previous justices, and spring up like "a jack in the box" with like presumption and pretense to defeat any judgment that may be rendered in the present or any subsequent action of this character, favoring the claim of the relator, so that, unless the views of the law as herein expressed shall prevail, I fail to discover how any similar proceeding against such third intruder, attendant with the ordinary "law's delays," would be otherwise than lamentably inefficient. The impotency of such repeated proceedings, instituted of prerogative right on behalf of the people, to install in office one adjudged rightfully entitled, would, upon the case made by the defendant, but serve to recall to one of but limited remembrance of classic lore the fruitless attempts, as related by Virgil of Æneas, to embrace the shades of his beloved wife and father :—

> " Ter conatus ibi collo, dare brachia circum,
> Ter frustra, comprensu manus, effugit imago,
> Par levibus ventis, volucrique simillima somno."

("Thrice as I stood, I essayed to fling my arms around her [his] neck ; thrice the phantom escaped the hands that caught it in vain ; incapable as the wind ; fleeting as the wings of sleep."—CONINGTON'S TRANS.)

To hold even that this second action was necessary to give effect to the previous judgment would be to avow the inefficiency as well of the sovereign power as of the courts to enforce a solemn judgment upon the right to an office, and that the person adjudged entitled thereto should be let into possession.

On the trial of this action, the plaintiffs offered in evidence the judgment record in the former action against Mangin, but it was excluded as immaterial and irrelevant, to which ruling exception was duly taken. This rejection of the former judgment is defended upon the ground that it was "*res inter alios*," and also that it was entered by consent. That proceeding was instituted against the party then usurping or intruding, and in possession of the office and exercising its functions. It is against such a person that this particular action, authorized by the Revised Statutes (2 R. S. 581, sec. 28), and as re-enacted in the Code (sec. 432), was alone maintainable. The mere phantom of outside claims to the same office finds no recognition in those provisions, and while section 440 of the Code gave permission in the bringing of such an action to include as defendants persons *claiming* to be entitled to the office, I recognize in that class only such as are actual incumbents, or persons in some way antagonistically exercising its functions, or assuming as principals or deputies, or with delegated right, to interfere in such official duties. Mere dormant, latent, or undemonstrative claims could in no way be intended as subjects of recognition. The attorney-general might well have taken judgment against the mere right of Mangin to the office, in which case, this defendant, Murray, could have asserted his present claim thereto without impeachment thereof by reason of that judgment; but as by that proceeding he elected to recognize and enforce the subsequently accruing right of the relator Gilchrist under his appointment by Justice Clancey in January, 1875, a different question is presented, depending upon the force and effect due to that judgment. The defendant Murray had not, from in January, 1875, until the 6th of January, 1877, promoted any legal measures to have his title asserted, nor, so far as appears, was the attorney-general made aware of any claim or pretension on his part, and the case cannot be divested of the suspicion and conviction that his claim to the office was resuscitated and conveniently recognized with an immediate view to defeat the impending judgment in the action wherein Mangin was

defendant. In my opinion, this manœuvre was unavailable to defeat the legal effect of that judgment, or to debar the relator Gilchrist from a right to repossess himself of the office, as thereby ordered and adjudged. It is true it was entered upon a stipulation that made it dependent upon the result of another action of like character pending in the courts, and involving a like title to a clerkship in one of the other district courts, but it was none the less final, unless questionable for *fraud*.

The provisions of the Revised Statutes (2 R. S. 582, sec. 32), re-enacted in section 437 of the Code, required that when such judgment should be rendered upon the title of the person so alleged, and the same be in his favor, he shall be entitled (after taking the oath of office, and executing such official bond as may be required by law) *to take upon himself the execution of the office*, and it is made his duty immediately thereafter to demand of the defendant the books and papers belonging to the office, and if refused, provision is made to compel their delivery. It thereupon became the duty of the defendant Mangin (Code, sec. 438 ; 1 R. S. 124) to deliver over such books and papers. Such being the duty as well of the relator as of the defendant Mangin, under the claim made upon him, and as a consequence of the judgment in that action, it is difficult to appreciate any right on the part of any one taking possession of the office by the consent or concurrence of the person dispossessed, and again intruding upon the office *pendente lite* to defeat the legal consequences of the action and the judgment as rendered therein. Whoever concurred in such action, or connived at any such attempt to defeat the judgment, became guilty of contempt of the court, and of a misdemeanor at law. The right of the relator to the office having been thus determined, that to the possession of the books and papers pertaining to it also followed as a necessary consequence. The relation of the defendant Murray to that controversy, and his claim to the office, was, in my opinion, necessarily affected by the judgment. At the time of the commencement of the action he was not in any respect in possession of the office, nor was he

assuming to exercise any of its functions. He was enjoying other remunerative employment under the corporation of this city, and his only pretense of asserting any right to it in 1875 or 1876 was as follows:—

Q. Have you seen Gilchrist there?

A. Yes, sir.

Q. Was that in 1875?

A. Yes, sir.

Q. Did you ever demand the office of Gilchrist?

A. No, sir.

Q. Did you ever offer to perform any duties in 1875?

A. I saw Judge Clancey several times, and asked him if I was legally entitled to the office; he said he did not think so. * * * I asked the position of Mr. Clancey in 1876.

Q. Did you go and demand this office of a person in possession after you heard of this decision? (*The People* v. *Flynn*, 62 N. Y. 375, decided in June, 1876.)

A. No, sir.

Q. Did you ever commence any action, or apply to the attorney-general to commence an action of *quo warranto* to recover possession of this office?

A. No, sir.

The effect of the proceeding had in the action against Mangin would, in my opinion, be wholly disregarded if it were held to have been without equal bearing or influence, as well upon the right of the relator Gilchrist as upon the claims of this defendant to the same office from and after January 1st, 1877, or at the end of February in the year when the present action was commenced. Prior to the Revised Statutes, although a judgment in favor of the people might oust the defendant, further proceeding was necessary on behalf of the person rightfully entitled to enforce the judgment by mandamus, if the office was not surrendered to him, and it was to obviate this, and to establish and immediately enforce the right of the party adjudged entitled to the office, that the additional provision requiring him *to take upon himself the execution of the office*

was inserted.    (See Revisers' Notes, 3 R. S. 2d ed., p. 788 to sec. 30.)    The action in this aspect partook of the character of one *in rem*, and the judgment given awarded the office to the person presented on behalf of the people, and accordingly adjudged him to be actually entitled to it, and to enter upon the execution of its duties with all incidental rights to invoke all the powers of the court to give effect to its judgment.    The right to an office and its enjoyment is one of public right and not one of private property (*Conner* v. *The Mayor, &c., of New York*, 5 N. Y. 285; *Smith* v. *Same*, 37 N. Y. 520).    Claims to its enforcement cannot be recognized as matter of proprietary interest or private right. (*The People* v. *Attorney-General*, 22 Barb. 116; S. C. 13 How. Pr. 182; *The People ex rel. Demarest* v. *Fairchild, Attorney-General*, in Court of Appeals, Nov. 1876, 4 N. Y. Weekly Reg. 58.)    In the first case the court says: "It was for the attorney-general, and not the court, to determine whether in any particular case it is proper that an action to try the right to an office should be brought or not.    *    *    * That it was the intention of the Legislature to transfer the exercise of this discretion from the court to the attorney-general, and thus reinvest him with the power he had at common law is evident.    *    *    * Although private rights may always ·be more or less involved in the action, yet it is in substance, as well as in form, an action on behalf of the people."    Actions thus brought *in jure publico* are not matters of private concern, nor are they *res inter alios*, but immediately affect the rights of every member of the community, and judgments for or against the people are equally conclusive upon such public right and that of every one so represented as if one immediately *inter partes*.    (*People* v. *Anthony*, 6 Hun, 142, and cases cited; *Roch. & Gen. Valley R. R. Co.* v. *Clark National Bank*, 60 Barb. 234.)    In the case of *The Earl of Carnarvon* v. *Villebois* (13 Mees. & Wels. 331), the court say that such a prior judgment·of a competent court upon a matter of a public nature, which concerns the crown and the subject, is to be received as evidence in a controversy with another citizen relating to

the same subject.    (2 Ph. Ev. chap. 3, sec. 8, " Quo War-
ranto.")

The only exception to this general rule, so far as I am
aware, is in matters of *habeas corpus* involving the liberty of
the citizen.    (*Ex parte Haine*, 3 Blatch. C. C. 1; *People* v.
*Brady*, 56 N. Y. 192.)    When a controversy arises in respect
to a public office, it is exclusively within the province of the
attorney-general to recognize the claims of such party as he
may deem most worthy or best entitled, and in such a proceed-
ing as he may institute in respect thereto (in the nature of a
*quo warranto*) it is one asserted by way of prerogative right,
and if successfully asserted, inures to the benefit or to the pre-
judice of any citizen having any interest in the question.
The proceeding against Mangin was instituted against the
only incumbent, or person exercising any of the functions of
the office, and it is difficult to conceive how any *latent* claims
of the present defendant could be otherwise regarded than as
represented in the controversy.    Whatever right he had ever
held to the office was one derived from then existing statutes,
or any subsequent laws that affected its tenure, privileges, or
emoluments.    (*Conner* v. *The Mayor, supra; The People* v.
*Roper*, 35 N. Y. 639.)

The rules of the common law are (outside of constitu-
tional restriction) within the absolute control of the Legis-
lature, and whatever may have been the character of the
proceeding by way of *quo warranto* before the Revised Stat-
utes, those instituted since their enactment to the same
end have become impressed with the innovations effected by
them and subsequent statutory provisions.    Such legislation
(notwithstanding any defects in this respect existing pre-
vious to the Revised Statutes to give effect to a judgment on
behalf of the people) conferred upon the attorney-general
a dominant discretion in the selection of an individual claim-
ant to an office from among several, and upon the courts full
power to enforce such claim as he presented, so as to instate
in office the person he deemed entitled thereto.    Such seems
to be the result of the judicial decisions of our courts on the
question.    From the revisers' notes above referred to, the

summary installation of the person so adjudged entitled to the office appears to have been clearly intended as enforceable against every adverse claimant, whether he was an usurper, an intruder, or merely made adverse claim to the office. So, too, the Code (sections 428, &c.) abolishing the writ of *quo warranto* and proceedings by information in the nature thereof, established its own appropriate remedies by civil action; and it seems clear that it was intended by such Legislature to give full effect to any judgment as to the right of one adjudged entitled to an office as to immediately install him therein. (*The People* v. *Conover*, 6 Abb. 220.) In accordance with these views are *Hartt* v. *Harvey* (32 Barb. 67) holding that, " by such judgment every claimant is bound, his right determined, and a final end put to litigation." So in *The People* v. *Flanagan* (66 N. Y. 243) the Court of Appeals say : " Where the people, through their constituted agents, thus ratify an election *and recognize the title of a citizen to an office*, it is not competent for them to question it by *quo warranto*." This decision applies with equal force to the case of an officer holding by appointment who has been thus judicially recognized. The proceeding in question having been one *publici juris*, was not influenced or controlled by incidental claims arising out of any private pretensions or latent rights of other individuals, and the judgment being in enforcement of a public prerogative right cannot be questioned except for fraud. (*Rex* v. *The Mayor of York*, 5 Durn. & East, 66.)

These considerations render a new trial necessary, without regard to the question whether the defendant had resigned all claim to the office by accepting one under the corporation ; that was incompatible. If this were the sole question, I should be inclined to hold in his favor, but do not regard myself as so committed.

Being of the opinion the former record should have been received in evidence, the judgment should be reversed and a new trial ordered, with costs to abide the event.

LARREMORE, J., concurred in the foregoing opinion.

CHARLES P. DALY, Chief Justice (dissenting). — The judgment in the action brought by the attorney-general against Mangin, upon the relation of Gilchrist, is, as respects the right to the office, in my opinion, conclusive only upon those who were parties or privies to it. The defendant Murray was appointed assistant-clerk by Justice Kivlen in March, 1873, and was removed in January, 1874, by Justice Field, Justice Kivlen's successor, upon the ground that his duties as a member of Assembly were incompatible with the discharge of his duties as assistant-clerk; and a person named Monaghan was appointed in his place. Justice Clancey succeeded Justice Field, and in January, 1875, he appointed Gilchrist, the relator, to the office in place or Monaghan. In January, 1876, Justice Clancey removed Gilchrist, and appointed Mangin; upon which the attorney-general, at the instance of Gilchrist, brought an action against Mangin to oust him, upon the ground that Justice Clancey had no power to remove Gilchrist. The Court of Appeals having determined in another action that the justices had no authority to remove assistant-clerks, a judgment was entered up by consent in the action against Mangin that he had " usurped, intruded into, and unlawfully held and exercised the office; " that he should be ousted therefrom, and that the relator Gilchrist was entitled to the office. The judgment of ouster was entered up against Mangin on the 6th of January, 1877, but four days previously, that is, on the 2d of January, 1877, Justice Clancey reinstated the defendant Murray in the office, and Mangin surrendered to him the possession of it; whereupon the attorney-general brought the present action, upon the relation of Gilchrist, to oust the defendant Murray.

The judgment in the action brought against Mangin was conclusive as against him, but I wholly fail to see how it can be conclusive against Murray, who, when the judgment was rendered, was in possession of the office and discharging its duties under an appointment made before either Gilchrist or Mangin was appointed. The defendant Murray being in possession of the office when the present action was brought,

the question raised was, whether Murray was rightfully en-
titled to the office—a question not presented, and in no way
involved in the action brought by the attorney-general
against the intruder Mangin. None of the authorities referred
to by the appellant, or in the opinion of my brother Robin-
son, go the length of holding that a judgment for the plain-
tiffs, in an action brought by the attorney-general to oust an
usurper, upon the relation of one claiming to be rightfully
entitled to the office, is conclusive, not only against the de-
fendant in the judgment, but, as respects the right to the
office, against every one; that is, as well against those who
were not parties to the action or proceeding as those who
were. I can find no authority for any such doctrine, and
that there never was any is, I think, apparent upon an ex-
amination of the nature of the action or proceeding by *quo
warranto* in such cases.

It was originally, as the name denotes, an enquiry to
ascertain by what warrant a person exercised the functions
of an office, brought by the attorney-general, either upon his
own motion, or upon application made to him by some one
having an interest, where there was reason to question the
right of the incumbent. "It is," says Blackstone, "in the
nature of a writ of right for the king against him who claims
or usurps any office, franchise or liberty to enquire by what
authority he supports his claim, in order to determine the
right." (3 Com. c. 17, sec. 5.)

At the common law there were two modes of procedure—
by writ of *quo warranto*, and by information in the nature
of a *quo warranto ;* the judgment in the first, which was the
older mode, being conclusive against the crown as well as
the defendant, whilst in the latter, the judgment was conclu-
sive only upon the defendant. (*Anon.*, 12 Mod. 225.) Infor-
mations in the nature of *quo warranto* were divided by
Blackstone into two kinds: *first*, those which are properly
the king's own suits, and filed *ex officio* by his own immedi-
ate officer, the attorney-general; and, *second*, those in
which, though the king is the nominal prosecutor, yet it is at
the relation of some private person, when they are filed by

the king's attorney in the King's Bench (4 Com. 308). And it was held, in *The King* v. *Francis* (2 T. R. 484), that informations of the latter kind were considered merely in the nature of a civil proceeding. The judgment given was that the defendant should not intermeddle with the office, and " be forejudged and precluded from exercising it in the future." The court might, in addition, impose a fine, but it was usually nominal. It was a proceeding to try the defendant's title, and would not lie unless the defendant had acted, or fully taken upon himself, the office or franchise ; for there had to be a user as well as a claim on the part of the defendant. (*Rex* v. *Whitwell*, 5 T. R. 85 ; Code, 184, 211.) It was a proceeding to oust one who had intruded himself into a public office or franchise, and did not, as the detail of the whole course of procedure in Mr. Cole's work will show, involve the determination of the right of any one else to the same office or franchise who was not a party to the proceeding as relator or defendant.

Justice Yates said, in *Rex* v. *Leigh* (4 Burr. 2146), " In civil actions the plaintiff must recover upon his own title. In cases of information in nature of *quo warranto* for usurpation upon the rights of the crown, the defendant must show that he has a good title as against the crown." After the statute (4 & 4 of Will. & M. c. 18), it became the practice in informations upon the relation of a private person to join him as a party-plaintiff, and in time no one not having an interest could be joined as relator ; for informations in the nature of a *quo warranto* would be granted only at the instance of a competent relator ; that is, one having a sufficient interest to warrant his interference (Cole, 172). He made or furnished the affidavits setting forth the facts upon which the application for an information was made, and if, after hearing the defendant upon a rule to show cause, the information was granted, the relator entered into a recognisance to prosecute ; and if finally judgment was recovered by the plaintiff, the relator recovered his costs, and if the judgment was for the defendant the relator had to pay the costs (Cole, pp. 148, 235, 236, 386). Though the suit was brought by the crown, it

was, in such cases, a proceeding in part for the relator's benefit, who had an interest in the office, being entitled to discharge its duties and having a right to its emoluments.

The Revised Statutes made some material changes. It allowed an information to be filed by the attorney-general without leave of the court, either upon his own relation or upon that of any private party, where a person should usurp, intrude into, or unlawfully hold any public office, upon filing which a writ issued as in personal actions. The information was filed against the person usurping the office, and the attorney-general might, in the information, set forth the name of any person rightfully entitled to the office, with an averment of his right, in which case, upon proof by affidavit that the defendant had received any fee or emolument of the office, he might be held to bail as in personal actions.

The statute further provided that in every such case judgment should be rendered upon the right of the defendant to the office, and upon the right of the party averred to be entitled to it, or only upon the right of the defendant, as justice might require; and if judgment was rendered in favor of the right of the person averred to be entitled, provision was made for his recovering damages by filing a suggestion upon the record, or by attaching it as a continuation of the judgment (2 R. S. 581, 582, 583).

The Code abolished the proceeding by information, as well as the writ, substituting an action by the attorney-general, and provided that when the action was brought upon the complaint of any private party having an interest in the question that he should be joined with the people as plaintiff, and also that the attorney-general might aver in the complaint the name of the person rightfully entitled to the office, with a statement of his right, and that judgment might be rendered as before upon the right of the party so entitled, or only upon the right of the defendant, as justice might require.

The material change made by this legislation was in allowing the action to be brought by the attorney-general without leave of the court, which before the Revised Stat-

utes was necessary, and by allowing an averment by him in
the complaint of the right of a person lawfully entitled to
the office, and judgment not only of ouster against the de-
fendant, but a judgment upon the right of the person averred
to be entitled to the office. I do not see that the effect of
this change is necessarily to make the judgment in favor of
the person so averred to be entitled conclusive as against all
the world, and as precluding the attorney-general, as Judge
Robinson thinks, from bringing any other action upon the
complaint of a person not a party to the previous action, and
whose right to the office was in no way involved in that ac-
tion. It is to the public interest that the person duly
elected to the office, or lawfully appointed to it, should exer-
cise its functions, and he should not be cut off from the
office and its emoluments because an action was brought by
the attorney-general against an intruder at the instance of a
person claiming the office, and who, as against the usurper,
was in that action adjudged to be rightfully entitled to it.
The rightful claimant of the office, being no party to that
action, has had no opportunity to show that he was the one
entitled to discharge its functions and receive its emolu-
ments; and if the attorney-general is satisfied that he, and
not the relator in the previous action, is the lawful officer,
I do not see why he should be precluded by the judgment in
that action from bringing another action, if, in the exercise
of his discretion, he thinks proper to do so to establish the
superior right. There is nothing in the legislation referred
to showing, in my opinion, that it was the intention of
the Legislature that there should be but one action, and
that the judgment in that action—no matter who were the
parties to it—should, as to the person entitled to the office, be
conclusive as against all the world. " It is," says Greenleaf
in his work on Evidence, § 522, "a most obvious principle of
justice that no man should be bound by proceedings to
which he is a stranger." Judgments bind only parties and
privies, and I see nothing in the enactment of the Legisla-
ture to show that they meant that this should be an excep-
tion to a rule of such universal application. The judgment

by the Code is a judgment in a civil proceeding, and, as is shown by the authority I have cited from the Term Reports, it has been so considered for a century. There is no reason, therefore, why the rule, that judgments bind only parties and privies, should not apply to it the same as to any other judgment in a civil proceeding.

The action must be brought in the name of the people, as all offices are derived from the people, and are for their benefit. But those who are lawfully entitled to fill them also have an interest as the persons designated by law to discharge their duties, and are entitled to the salary, fees, or emoluments allowed as compensation for the performance of those duties. An office is defined by Blackstone to be the *right* to exercise a public employment and to take the fees and emoluments thereunto belonging (2 Com. c. 5); and the American text-books are to the same effect. " An office," says Bouvier in his Dictionary, " is a right to exercise a public function or employment, and to take the fees and emoluments belonging to it." " The idea of an office," says Burrill in his Glossary, " embraces the idea of tenure, duration, fees and emoluments, *rights* and powers, as well as that of duty." It is a right for which *indebitatus assumpsit* would lie at the common law by the one having the title to the office to recover the fees and emoluments received by an usurper. (*Shuttleworth* v. *Garnet*, 3 Lev. 262; *Arris* v. *Stuckeley*, 2 Mod. 260; *Howard* v. *Ward*, T. Jones, 127.) This is the reason why the rightful claimant is joined with the people as plaintiff, and why the relator recovers his costs if judgment is given for the plaintiff, and has to pay the costs if it is rendered for the defendant. To hold that such a right may be completely cut off by an action brought by the attorney-general against an intruder at the instance of a person claiming the office, because the relator was declared in that judgment to be rightfully entitled to the office, is to put a construction upon the statute not warranted, in my judgment, by its provisions.

When the present action was brought by the attorney-general, at the instance of the relator in the former action,

the defendant Murray was in the actual possession of the office, and as he held it by a rightful title, never having been lawfully removed, I think that Judge J. F. Daly was right in holding that the judgment in the suit brought against Mangin in no way affected the defendant, as he was neither party nor privy. He was not a privy, being in possession under a title anterior and superior to that under which Monaghan, Gilchrist and Mangin claimed the office.

It was held, both by this court and by the Court of Appeals, that such an office as the one held by the defendant Murray was not incompatible with that of a member of the Legislature, and that the incumbent by accepting the latter did not vacate the former. (*People* v. *Green*, 5 Daly, 254; Id. 58 N. Y. 304.)

No such question could be raised, nor was the plaintiff entitled to give evidence to show that the defendant had voluntarily resigned or abandoned the office. Offices become vacant upon the happening of either of the events specified in the Revised Statutes (1 R. S. 122); and there was no evidence, nor any offer of evidence, to show that any one of the events had happened which would vacate the office. The defendant did all that he could do to discharge its duties. When notified of his removal he went to Justice Field and disputed his right to remove him. He filed a formal protest with the justice and the comptroller, and commenced a suit for his salary, which is still pending. He went frequently to the court to perform his duties, but was not allowed to do so, another person having been put by the justice in his place. He also applied to Judge Clancey, Judge Field's successor, and was told by him that he (the justice) did not think that he was entitled to it. By accepting other employment not incompatible during the time that he was thus kept out of the office he did not forfeit his right to the office; and upon the facts, I think the judge was right in directing a verdict for the defendant.

Judgment reversed.*

* The decision of the general term here was reversed, and the judgment entered on the decision at trial term affirmed by the Court of Appeals on May 21st, 1878. (See 73 N. Y. 535.)